IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAY JALA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DDG CONSTRUCTION, INC., <br><br> Defendant. | CIVIL ACTION <br> NO. 15-3948 |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                 November 1, 2016

      The parties in this case contracted for the building of a motel. The project ran long and the defendant eventually left the job before completing the work. Having stipulated to liability, and in advance of a trial solely on damages, the defendant filed a motion for partial summary judgment seeking to block recovery of certain categories of damages based on a contractual waiver of consequential damages. As explained below, the Court grants the motion as to some of the identified damages and denies it as to others.

Factual and Procedural Background

      In July 2013, Plaintiff Jay Jala, LLC, contracted Defendant DDG Construction, Inc., to act as general contractor for construction of a Motel 6 in Allentown, Pennsylvania, using standard contractual forms from the American Institute of Architects. The contract set a guaranteed maximum price of $2,404,171 and an original completion date in August 2014, later extended by agreement to October 2014. Delays continued beyond the agreed extension, and Defendant (along with its subcontractors) left the

project at the end of December 2014 with the work still incomplete. Plaintiff then terminated the contract for cause on January 23, 2015, and finished the project on its own, opening the motel on May 15, 2015.

After initially filing counterclaims, Defendant withdrew them and stipulated to liability on Plaintiff's claim for breach of contract. During the course of litigation, Plaintiff has identified several categories of damages. Defendant does not contest some of them, except as to the specific amounts claimed, but argues the parties' contract precludes certain categories entirely. The challenged categories are: project completion fee by owner; loss of income; insurance; advertising expenses; furniture, fixtures, and equipment and interest paid; bank interest; and utilities paid from January 23, 2015, until May 15, 2015.

These types of damages are potentially barred by a contract clause waiving consequential damages:

> The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes
> .1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
> .2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.
> This mutual waiver is applicable, without limitation, to all consequential damages to either party's termination in accordance with Article 14. . . .

Several other contract provisions may bear on the interpretation of this waiver. The section on termination calls for payment of "other damages incurred by the Owner and not expressly waived." Other portions focus on timing and delay, clearly indicating that

the completion deadline is essential to the contract and that damages for delay are at least in some respects available: "The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction," and "This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents." A few other provisions relate to specific types of damages and will be addressed below.

Discussion

The question raised by this motion is: what distinguishes available direct damages from the consequential damages waived by the contract? Defendant's brief frequently discusses foreseeability, and it is true in some sense that predictability is relevant to determining whether damages naturally flow from a breach and are considered direct or indirectly result and are considered consequential. *See DeHart v. HomEq Servicing Corp.*, 47 F. Supp. 3d 246, 253–54 (E.D. Pa. 2014). But that definition has never been very instructive for analyzing particular damages, and foreseeability is the limit of all contract damages, not the distinction between direct and consequential damages. *See Frank B. Bozzo, Inc. v. Elec. Weld Div. of Ft. Pitt Bridge Div. of Spang Indus., Inc.*, 423 A.2d 702, 709 (Pa. Super. Ct. 1980), *aff'd*, 435 A.2d 176 (Pa. 1981) (citing *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854)).

"Rather than turning on foreseeability, the difference between direct and consequential damages depends on whether the damages represent (1) a loss in value of the other party's performance, in which case the damages are direct, or (2) collateral

losses following the breach, in which case the damages are consequential." *Atl. City Associates, LLC, v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 179 (3d Cir. 2011). "Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract." *Id.* (quoting *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007)).[1] *Atlantic City Associates* dealt with New Jersey law but applied Restatement (Second) of Contracts § 347, *see id.*, which Pennsylvania also appears to follow, *see Douglass v. Licciardi Const. Co.*, 562 A.2d 913, 915–16 (Pa. Super. Ct. 1989) ("Pennsylvania courts . . . have generally allowed damages for incomplete or defective performance of a building contract to be measured by the cost of completing the work or correcting the defects by another contractor."); *see also Buddy's Plant Plus Corp. v. CentiMark Corp.*, No. CIV.A. 10-670, 2014 WL 1317578, at *18 (W.D. Pa. Mar. 31, 2014), *aff'd*, 604 F. App'x 134 (3d Cir. 2015). So direct damages are the costs of a plaintiff getting what the defendant was supposed to give—the costs of replacing the defendant's performance. Other costs that the plaintiff may not have incurred if the defendant had not breached, but that are not part of what the plaintiff was supposed to get from the defendant, are consequential.

---

[1] Plaintiff's reading of *Penncro* is overstated ("Therefore, fees and costs which were expended in the expectation of performance of a contract are considered direct damages . . ." (Pl. Br. at 17)). The court there noted that lost profits can sometimes be had as direct damages, and that "if a services contract is breached and the plaintiff anticipated a profit under the contract, those profits would be recoverable as a component of direct, benefit of the bargain damages." *Penncro*, 499 F.3d at 1156. In that case, for allegedly improper reasons, the defendant terminated a contract for ongoing services; the plaintiff wanted to recover the profits it would have made *on that very contract from that defendant* if the defendant had not wrongly terminated. *See id.* at 1154-56. The lost profits it sought were the payments the defendant would have made for the plaintiff's services if the relationship had continued as it should have; in other words, these losses were the defendant's actual performance under the contract, not some other cost the plaintiff incurred because it expected the defendant to perform. Similarly, in the other case Plaintiff cites on this point, the fee at issue had been *paid to the defendant*, and the plaintiff could recover it as direct damage because the defendant breached before the plaintiff could get the full value of the services the fee was for. *See Carolee, LLC v. eFashion Sols., LLC*, No. 2:12-CV-02630 WHW, 2013 WL 5574594, at *7 (D.N.J. Oct. 9, 2013). The plaintiff was merely recovering the value of the defendant's performance.

Even this more developed definition is not precise, so it is important to remember that the goal of contract interpretation is to give effect to the parties' intent and that the primary guide to determining their intent is the actual language of the agreement. *See PBS Coals, Inc. v. Burnham Coal Co.*, 558 A.2d 562, 564 (Pa. Super. Ct. 1989). The consequential damages waiver here includes several particular examples of damages, but its language covers consequential damages generally. ("The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. . . . applicable, without limitation, to all consequential damages . . .")

Before applying these rules to each type of damages in turn, it must be noted that separating direct and consequential damages in this case is complicated by the fact that Defendant's performance under the contract was not only to construct the motel, but crucially, to do so in a certain time frame. Plaintiff points out contract provisions, noted above, that specifically avoid foreclosing delay damages. One of those, though, refers to payments made to other contractors because of Defendant's delays and deficiencies, and none of the costs challenged by this motion appear to constitute payments to other contractors. The other provision simply states that "Section 8.3 does not preclude recovery of damages for delay." That section provides that if the Plaintiff causes a delay, the Plaintiff, through the architect, is obligated to approve an extension. The section is not generally about damages, and a clause that says "this clause does not preclude delay damages" does not prevent a different clause from doing so, so this section has little effect on the consequential damages waiver. With nothing more specific in the contract about delay damages, the timing aspect of Defendant's performance obligations becomes

merely a factor in the analysis of whether each type of damages constitutes a loss of Defendant's performance or a secondary consequence.

### Loss of Income

Plaintiff's brief indicates that it has withdrawn its claim for lost profits or loss of income. No doubt it has done so because these damages are quite clearly covered by the waiver. In any event, there is no need for analysis on this category except to note that precisely because it was so clearly waived, it was likely a major driver of this motion and is now moot.

### Project Completion Fee

At first glance, it is not clear what the "project completion fee" actually means. Defendant uses deposition testimony to suggest that this fee is a charge for the profits lost when one of the Plaintiff's managers was forced to forego other business ventures to focus on taking over this project. That manager did testify that the project completion fee was "[b]ecause I lost—I was leaving my other business duties and I was spending all the time for this project." (Dep. of Satyan Kadhiwala at 64, lines 2-4.) That type of loss would indeed be precluded by the consequential damages waiver. But on a closer look, Plaintiff may actually be asking for reimbursement of overhead costs for the time period during which it served as its own contractor after Defendant quit. Paragraph VI-3 of the accounting expert's report submitted by Plaintiff refers to a provision in the contract by which Defendant was paid a "Company Overhead" fee, and the expert calculates an

equivalent value for the time Plaintiff oversaw the project to completion.[2] Another indication comes from Plaintiff's citation of *Mee v. Safeco Insurance Company of America*, 908 A.2d 344, 349–50 (Pa. Super. Ct. 2006). Though that opinion had an extremely different context—namely, a claim for insurance benefits—it deals with a claimant's entitlement to the value of overhead costs a contractor would charge, even if the claimant does the work himself (or hires subcontractors without hiring a general contractor). *Id.* Given this citation and the expert report's context, the deposition testimony takes on different meaning. The manager testified that the project completion fee was based on dedicating his time to this project instead of other duties, and asked how the number was calculated, he said: "That's DDG's general conditions, what they are charging me and company overhead." (Dep. at 64, lines 9-10.) In other words, as general contractor, Defendant charged a fee to cover its overhead; Plaintiff took over the role of general contractor, and its company has overhead costs, too, that would normally have been covered by other work if all its time had not gone to this project.

Taken this way, and assuming Plaintiff's evidence at trial supports this type of cost, the project completion fee may be recoverable direct damage. Defendant's performance under the contract was to construct the motel, but Defendant did not complete that performance. Plaintiff is straightforwardly entitled to recover the cost of finding substitute performance, and if it had hired a replacement general contractor, that company may well have charged an overhead fee just as Defendant did (or it might be otherwise built in to the price). The fact that Defendant arranged substitute performance

---

[2] The Company Overhead fee was $110,000 for an original nine-month period, or about $12,222 a month. The expert puts a value on this item of $49,000, which would be about four months' worth, roughly matching the time between contract termination and completion of the motel.

7

by managing the project on its own does not mean it is not entitled to the same costs as any other contractor, provided the cost is reasonable.

Defendant, interpreting the issue as ordinary lost profits, has not argued that the contract's express waiver of damages "for loss of management or employee productivity or of the services of such persons" covers this category of damages. It is the Court's view that this language refers to a different type of disruption that could be caused by the relationship of the parties, and that the claim for a "project completion fee," which is really a charge for overhead during Plaintiff's time substituting its own performance as general contractor, may constitute the direct costs of replacing the performance Defendant failed to render. This cost will not be precluded as a matter of summary judgment.

Insurance

Again it is not absolutely clear what insurance costs are at issue, but Defendant appears to be correct that Plaintiff's request refers to payments—made after the agreed completion date but before the motel was completed and opened—for insurance coverage that would be associated with an operating motel business, such as liability for the property of motel guests, workers' compensation, and numerous other types of coverage. Plaintiff's accounting expert refers to an email from Brosky Insurance Agency, Inc., and Defendant's description of the coverage comes from a quote from the same agency. The accounting expert's calculated amount is lower than what Defendant says Plaintiff demanded, so it is possible some effort has been made to discriminate among various coverage types, but it all appears to be coverage for the hotel during operation.

Plaintiff's brief does not describe the insurance coverage involved and does not make an argument about direct and consequential damages; rather, the sole argument is that the contract expressly obligates Defendant to pay for insurance. The "Scope of Work" portion of the contract provides: "The contractor will provide insurance as indicated on the attached Insurance Requirements. The contractor will be responsible for additional cost of insurance should the project [be] delayed . . . ." The record does not appear to include any attachment labeled "Insurance Requirements." The only attachment listed at the end of the "Scope of Work" document that might contain information about insurance responsibilities is the "Contractor/Owner Responsibility Matrix," which merely notes that "General liability Insurance" is the general contractor's responsibility with "Owner's protective liab Excluded," and "Owner's Risk Insurance" being the owner's responsibility. The incorporated AIA form A201-2007 refers, in Article 11, to numerous aspects of insurance coverage that the contractor must purchase. But with the possible exception of coverage for damage "arising out of completed operations," all the coverage involved appears to deal with risks during Defendant's work on the project. While there may be some minor ambiguity regarding the precise coverage at issue, it surely cannot be that Defendant contracted to pay for insurance for the ongoing operation of the motel business after construction was completed and the motel opened; therefore, the contract provisions related to insurance are not relevant to whether Plaintiff can recover this category of damages.

The expert report seems to confirm Defendant's interpretation that Plaintiff purchased insurance for the operation of the motel business prior to opening so that the coverage would be in place without any gap as soon as the hotel opened. Because the

opening was delayed, the time during which Plaintiff carried that coverage before it was actually needed stretched out to several months. Those unnecessary payments were a consequence of the delayed opening, which was Defendant's fault. But payment for that type of insurance coverage was not a part of Defendant's expected performance under the contract. It was a separate business arrangement that the Plaintiff made, not something Plaintiff had to pay in an effort to replace the performance Defendant failed to provide. If Plaintiff proves at trial a cost for a type of insurance coverage that Defendant was supposed to pay during its work on the project that Plaintiff had to pay instead while finishing the project, that cost might be recoverable as direct damage. The insurance costs that appear to be involved here are at best consequential and not recoverable.[3]

Advertising Expenses

The advertising expenses are much like the insurance costs but even more straightforward. There is no argument that advertising expenses are expressly covered by the contract, and there is no question what expenses are at issue. The deposition testimony regarding the advertising expenses is clear: "DDG promised to open the hotel in October 2014, and so we put a billboard on 78, Motel 6 coming soon. So I had the expense running until the motel was open. So that's billboard money." (Dep. at 64, lines 21-24.) The record also reflects some print and online advertising with Travel Media Group (though that did not begin until around the time Defendant quit the project, when Plaintiff surely knew the motel would open late).

---

[3] It might even be questioned whether Plaintiff's choice to buy coverage preemptively and then carry it for several months while it knew the motel would not be ready to open was even foreseeable at all; if not, it would be beyond even consequential damages.

10

Again, these costs may have increased or been rendered wasteful by the delay, but they were not part of the value of Defendant's performance. This extra or wasteful cost may have been caused by Defendant's breach, but the expenses were not designed to deal with or make up for that breach or recover the lost value of Defendant's performance. This category of damages is consequential, covered by the waiver, and, therefore, not recoverable.

### Furniture, Fixtures, and Equipment

The argument as to Furniture, Fixtures, and Equipment (FF&E) is similar to that on insurance. Plaintiff claims the contract expressly makes this Defendant's responsibility because it calls for Defendant to provide a storage container in which to store the FF&E between delivery and eventual installation. But the expenses Plaintiff seeks to recover under this heading are Plaintiff's costs of *leasing* the FF&E for an extra period of time due to delay. Providing a storage container is not the same thing as paying the equipment rental, so, as with the insurance costs, the contract provisions Plaintiff highlights do not apply and the basic consequential damages analysis governs.

And once again, while Plaintiff had to pay the FF&E lease fees for a longer period of time, this was an indirect consequence of the delay Defendant caused. This was not a cost Defendant was supposed to pay and did not. It was not something Plaintiff expected to get from Defendant and had to get elsewhere or provide itself. Plaintiff may be able to recover costs of *storing* the FF&E if it incurred any while completing construction, but the FF&E lease costs are consequential and barred by the contract.[4]

---

[4] Neither party addresses the waiver's express inclusion of "damages incurred by the Owner for rental expenses," but it may be an alternative reason to preclude the FF&E damages.

11

Bank Interest

Next, Plaintiff seeks to recover interest paid on the construction loan because of the delay. It seems clear that the expenditure at issue is "an additional seven months of interest on the construction loan prior to the loan converting to a permanent loan." (Expert Report at paragraph VI-8.)

On this issue, it is Defendant who argues the contract has a relevant express provision: the consequential damages waiver refers to "losses of use, income, profit, *financing*, business and reputation" (emphasis added). Defendant cites a federal case from Florida for the concept that *increased* financing costs should be included as similar when the contract language refers to *lost* financing. *See Bartram, LLC v. C.B. Contractors, LLC,* No. 1:09-CV-00254-SPM, 2011 WL 1299856, at *3 (N.D. Fla. Mar. 31, 2011). But the footnote to the very sentence Defendant cites distinguishes the type of increased financing costs Plaintiff seeks here:

> The costs of financing in this case [*Bartram*] may have also been caused by lost profits and rents due to construction defects, which were specifically included in the waiver. This sets the costs of financing apart from *extended financing costs that flow from construction delay, which are considered to be direct damages*.

*Id.* at n.3 (emphasis added) (citing *Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F.Supp. 692, 702 (D. Mass. 1990) (finding that extended financing costs due to construction delay are direct damages)). This distinction is sensible. Defendant contracted to build a motel by a certain date and failed to do so. Plaintiff, in an effort to get what it bargained for, had to keep working on the construction itself. Plaintiff did not have to pay for motel operations insurance to construct the building, it did not have to pay for

billboards to construct the building, and it did not have to rent FF&E to construct the building (or at least this last item was not part of what Defendant was supposed to do to construct the building). But Plaintiff *did* have to take out and incur interest on a loan to construct the building, and pay additional interest during the delay: clearly, it is an integral cost of completing Defendant's performance, which was construction of the building.[5] The loan interest costs are not much different in this respect than any other necessary construction input. If Defendant agreed to build the motel using no more than a certain amount of concrete, used up the full amount, and left the job incomplete, Plaintiff could certainly recover as direct damages the cost of additional necessary concrete. Here, Defendant agreed to build the motel using no more than a certain amount of time and therefore, necessarily, a certain amount of loan interest. Defendant used up all the time and left the building unfinished, so Plaintiff can recover as direct damages the cost of additional time necessary to finish construction. In this way, Defendant's obligation to complete the project on time, and the contract's allowance of delay damages, are naturally integrated into interest charges, and thus direct rather than consequential damages.

---

[5] *JML Industries, Inc. v. Pretium Packaging, LLC*, No. CIVA 3:04CV02552, 2006 WL 3042973 (M.D. Pa. Oct. 25, 2006), which Defendant also cites, is also distinguishable. The contract there called for the plaintiff to start a company and supply LEGO lids, and the defendant agreed to buy them. *See id.* The plaintiff arranged financing for equipment to produce the lids and the defendant ended up backing out because of a price dispute. *See id.* The plaintiff's financing costs were consequential because the financing arrangement was not part of making up for the defendant's absent performance, which was simply to buy lids. And the Court respectfully disagrees with the one commentator who held the view that the AIA standard consequential damages waiver covers the type of costs Plaintiff seeks here. *See* Dianne S. Coscarelli, *The 1997 AIA Construction Documents: A Guide for Lender's Counsel*, Prob. & Prop., DECEMBER 1999, at 55. It is worth noting that Coscarelli wrote for the purpose of advising lenders about potential problem areas in the AIA terms.

Utilities

The final category of damages covers monthly utility bills Plaintiff paid during the period of time it was finishing the project on its own after Defendant's departure. One of the contract provisions Plaintiff notes, paragraph nine of the "Scope of Work" document, is irrelevant as it obliges Defendant to do the paperwork regarding utility initiation for the hotel, and even there, Plaintiff was to pay associated fees. But paragraphs sixteen and twenty-five clearly make it Defendant's responsibility to pay for the monthly utility bills until the building was complete. Therefore, payment of utility costs during construction was expressly part of Defendant's performance, and the several months of additional utility bills were a direct part of Plaintiff carrying out Defendant's performance on its own. To the extent they can be proven at trial, these costs are also recoverable.

Conclusion

Defendant seeks from the Court a ruling on summary judgment that several categories of damages Plaintiff has demanded are unrecoverable under the consequential damages waiver of the contract. As described in greater detail and for the reasons stated above, the completion fee/overhead charge, interest on the extended term of the construction loan, and utility costs may be recoverable, while the insurance costs, advertising expenses, and FF&E lease fees are by definition consequential in nature, waived by contract, and not recoverable. Plaintiff has dropped its request for lost income, but that, too, would clearly be consequential and not recoverable. Additionally, the amounts of any available damages are of course still subject to proof at trial.